May it please the Court. The Social Security Administration adjudicates over 2 million claims of disability a year. Therefore, it needs simple rules. Some of those simple rules are announced in Social Security rulings, which are binding. One rule states that if a claimant reaches Step 5, the claimant is disabled unless the claimant can work 8 hours a day, 5 days a week, or an equivalent work schedule. It's a very simple rule. The agency said 8 hours. The agency did not say 7 or 8 hours or 6 or 7 or 8 hours. The agency said 8 hours. The ALJ in this case failed to follow SSR 96-8P and SSR 96-9P, which both refer to the full-time work rule. The ALJ, in its formal findings, stated that Mr. Ripley was limited to 7 hours of work in an 8-hour day. That corresponds to the judge's discussion of the medical evidence in the ---- It depends on how you read his statement. It can be read to say 6 hours of standing or sitting, 1 hour standing, 1 hour sitting. I think that the parties are in agreement that the limitation to total work was 7 hours. The ALJ ---- Where does that come from? It comes from the ALJ's formal finding at page 267 of the record. The judge refers to sitting and standing 6 hours and then also standing and walking for 1 hour in an 8-hour day. But it's the ---- My point is it can be either standing or sitting for 6, standing for 1, and sitting for 1, which totals out to 8. I don't ---- I think that the ---- No one has interpreted the decision such as that. The parties have agreed that the ALJ meant 6 hours of standing for 6 hours, and in    So the ALJ is not saying that the ALJ is going to have to do 8 hours of standing or walking for 1 hour of standing and or walking. Normally ---- No, that's the end of it. I mean, if the Social Security Administration agrees with you, then that's the end of the case, right? I believe so. The claimant is ---- We're going to hear from the Social Security Administration. Right. The Commissioner, to my knowledge, has not argued that the ALJ formally found 8 hours of work in an 8-hour day. The Commissioner's position is the ALJ implicitly meant to find 8 hours. Sure. That's what I'm saying. That's just the only logic. You started off by saying that the Social Security Administration operates by rules. One of them is that a work in an 8-hour day has a break in the morning and a break for lunch and a break in the afternoon. And so anybody who works for the Administration, on your own theory, must surely know those rules and the deciding cases with reference to them. Ideally, the ALJ would have acknowledged 96-8P, 96-9P, saying how its decision was consistent with those rulings. The ALJ did not acknowledge either rule, and so it looks from this decision the ALJ was simply unaware that 7 hours in an 8-hour day was not enough and 7 hours in an 8-hour day should mandate a finding of disability. If there's any ambiguity in the judge's decision, if it's unclear whether or not the judge has actually applied either ruling, the Court should reverse and remand to the Administration for further clarification of fact findings. On this record, at least the ALJ's decision is inconsistent. The ALJ says both that the claimant can and cannot work full time. Your theory of this is that when the judge says, refers to 8 hours, and we add up the 6 hours, and then he says stand and walk up to 1 hour, that the ALJ simply doesn't know what the SSR requires. Yes, the ALJ is apparently unaware that 7 hours in an 8-hour day requires a finding of disability. And consistent with that, the ALJ asked the vocational expert a 7-hour hypothetical question. And so it's no accident that the ALJ's hypothetical question to the vocational expert is for 7 hours, because that's also what the ALJ found in his formal findings. Now, the Commissioner concedes, I think, that the hypothetical question is only for 7 hours. The Commissioner's position is that the vocational expert knew that the 7-hour hypothetical question is actually a hypothetical question for 8 hours. For this, the Commissioner relies on the supposed expertise of the vocational expert, but not on any statement the vocational expert made. In fact, the Commissioner's position reduces to another citation of SSR 969P saying, well, 969P says that breaks and work can constitute an 8-hour day. I think that the plain language of 9P contradicts that. 9P refers to sitting and working at 2-hour intervals, allowing for the morning and afternoon break and also 2 hours of work followed by a break, 2 hours of work followed by lunch, 2 hours of work followed by an afternoon break, and then, again, 2 hours. The agency could have said in its ruling that 7 or 8 hours is enough, that 6 or 7 hours is enough. The agency didn't. The agency made a very clear rule for its lawyer and non-lawyer adjudicators to apply requiring that claimant be able to form 8 hours in an 8-hour day. But putting aside the issue of whether or not the ALJ found 7 hours in an 8-hour day and related the problem with vocational expert's testimony, the ALJ's own hypothetical question did not reflect his finding that the claimant had moderate limitations in the ability to understand, remember, and carry out detailed tasks. This is based upon the ALJ's realization that the claimant took very serious pain medication, such as their narcotic duragesic patch. Now, the commission ---- Isn't that mooted by the specific job description which incorporated that ability? Yes. We argue that the ALJ's error is harmless because the one occupation the commissioner maintains the ALJ, the claimant can do is semiconductor bonder, expressly requires the ability to understand, remember, and carry out detailed tasks. That's at addendum page 34. Now, the commissioner says that the Dictionary of Occupational Titles does not say or does not mean that the claimant needed to be able to perform, understand, remember, and carry out detailed tasks. Well, that's directly contrary to the DOT. The commissioner's assertion in litigation that the DOT, the Dictionary of Occupational Titles, is incorrect. It's neither evidence nor substantial evidence. And, in fact, this Court's decision in Johnson held that you need persuasive evidence to justify the deviation of vocational expert's testimony from the DOT. The commissioner's assertion in litigation is not that persuasive evidence. Not only does this Court's decision in Johnson require persuasive evidence from the vocational expert, also the Social Security's own rules do. Social Security ruling 004P requires a reasonable explanation from the vocational expert addressed by the ALJ to justify any departure of vocational expert's testimony from the DOT. In this case, for the detailed work rule, there is no such evidence from the vocational expert. All we have is the commissioner's assertion that the DOT doesn't mean what it says. If I could reserve the rest of my time. You'll hear from the commissioner. Good morning, Your Honors. My name is Stephanie Martz on behalf of the commissioner of the Social Security Administration. What we have here is not an argument about what the law is. There's no disagreement by the commissioner that there's a requirement at Step 5 to show that somebody can perform full-time work. The commissioner would contend that Mr. Schnaufer and the appellant are reading one line of the ALJ's decision and taking it out of context and not looking at the ALJ's decision as a whole and as the record as a whole, and including the extensive medical records that talk about Mr. Ripley's ability to perform work on a sedentary to medium basis, including his ability to perform that work full-time. I think there's a reasonable inference that can be made from the medical record and the ALJ's decision and explicit and thorough discussion of that medical record that he found that Mr. Ripley could perform work on a full-time basis. Can you help us feel better about the record? We have finding number 7 on page 267 of the record, which does have a little bit of an ambiguity. It looks like it could be read two ways. Is there other evidence here that the ALJ understood that Mr. Ripley had to be able to work an 8-hour workday and not just be at work for 8 hours, including breaks and lunch? 96-8P and finding at Step 5, the only way he could find him not disabled at Step 5 is if he could perform work on a full-time basis. The contention from Mr. Ripley is that the ALJ misunderstood the SSR. Now, we do have a reference to an 8-hour workday, but this is on finding 7 where the ALJ says he may sit up to 6 hours of an 8-hour workday and to stand and walk up to 1 hour of an 8-hour workday. That adds up to 7, according to Mr. Ripley. Yes, that is his contention, and I believe that you could read that to say 8, that it could be 6 hours plus 1 hour of standing and 1 hour of walking, which would... Is there anything else in the record that indicates that the ALJ understood the standard or that the ALJ was asking about a full 8-hour workday as described in the SSR? Not explicitly, Your Honor. I mean, what he says here is that... Everything sort of rides on how we read that paragraph. Right. And as this Court said in Magellanus v. Bowen in 1989, that this Court is not blind. It can make reasonable inferences from the record when they're there to be made. And I believe that this is a reasonable inference. He's talking about an 8-hour workday. Obviously, if he didn't believe that 8 hours was some sort of measurement, he wouldn't be referring to an 8-hour workday. He refers to the definitions of sedentary work, which if you look at definitions by the DOT and the Social Security Administration would say that somebody who can perform sedentary work would be able to sit usually 6 hours and to stand and walk for approximately 2, adding up to 8. I believe that the inference can be made from the record that he was finding that he could perform full-time work. There is some discussion with the vocational expert. He asks the vocational expert if he was to add to the hypothetical there was an inability to complete a normal workday or workweek without interruptions from psychological-based symptoms or to perform at a consistent pace without an unreasonable number and length of rest periods, saying, you know, if he had an inability to perform this, whether or not there would be any work. So when he's talking at that point, this discussion with the vocational expert, and I'm reading at the bottom of the experts' record at 252 going to 253, they're talking about a normal workday and a normal workweek, which as defined by the DOT and the Social Security Administration would be a 40-hour workweek. So I believe there's inferences that can be made from the record that would lead to a conclusion that the ALJ found that he could perform full-time work, and that's what the V.E. was providing testimony about. I just wanted to discuss briefly the last argument raised by a palant regarding what the semiconductor bond or job involves. According to Mr. Ripley, this job involves detailed instructions, and the commissioner is not contending, as Mr. Ripley's counsel has just said, that the DOT is wrong. The DOT describes this job as an optional job. It's an unskilled job. Unskilled job is defined as how Social Security defines it, which is the same as how the DOT describes it, and this is at 20 CFR 404-1568A, as unskilled work is work that needs little or no judgment to do simple duties that can be learned in a short period of time. SSR 004P states that specific vocational preparation of one to two is equivalent to an unskilled job. The semiconductor bond job has a specific vocational preparation level of two, which is an unskilled job. The regulations also describe an unskilled job as a job that is simple, that is work that primarily involves handling, feeding, off-bearing, or machine tending, which reading the description of the Dictionary of Occupational Titles. This is a simple, unskilled job. It is not a detailed job. This whole description of calling this a detailed job comes from a different part of the Dictionary of Occupational Titles that's not at play here. It's the general educational development description that the DOT uses. It talks about a reasoning level of two, which is a job that is beyond the unskilled level. And that's simply not what the DOT describes this job as. Thank you. Thank you. Mr. Schnaufer, you have some reserve time. Yes. The Commissioner has made two new arguments, a new argument that the DOT is not  consistent with the findings the ALJ made are six hours, one hour, and one hour. The Commissioner has waived that argument. Even the Commissioner had not waived that argument. It simply cannot be reconciled with the ALJ's findings. The ALJ's findings are inconsistent on their face. The Commissioner has also made a new argument that the hypothetical question at page 252 shows the ALJ was really asking about full-time work. But the actual hypothetical question at page 251, upon which the ALJ relied, does not refer to full-time work. It refers to seven hours of work in an eight-hour day. And so even if the Commissioner had not waived that argument, it simply doesn't, it's not supported by the ALJ. Counsel, if we were to agree with you, what is it you want us to do here? You have alternative, Ripley requests alternative relief. On the one hand, the Court can conclude, consistent with the ALJ's expressed findings, that Ripley can work seven hours in an eight-hour day and then is disabled. Or, in the alternative, Ripley requests a remand for an ALJ to make further findings consistent with 96AP and also to obtain vocational expert testimony in response to an accurate hypothetical question. Are you saying that we can award benefits at this stage? Yes. This Court has authority to hold that Mr. Ripley is disabled on the current record. The Court could refer to the ALJ's own finding that the claimant can work seven hours in an eight-hour day, and the Commissioner concedes this would be consistent with a finding of disability at step five. However, Ripley has also asked for an alternative relief, which is a remand for further fact-finding for the ALJ to make decisions consistent with the rulings. And I think this is, a court should at least do that, given the Chenery Doctrine, where a court does not affirm based upon rationales or findings the ALJ did not have made, but should remand to the agency for further fact-finding for consistent findings. That's consistent with this Court's prior decisions applying Chenery and also 96AP. For example, in Pinto, the Court found that the ALJ's findings were inconsistent with 96AP and remanded for further fact-finding for adequate findings. The Commissioner has made a speech about what the dot shows right now. The Commissioner has asked for a remand for that, and has, I think, shown why the case law requires the V.E., not the Commissioner's counsel, to address the dot. It's not for this Court to weigh that evidence. Thank you. Thank you, counsel. The case just argued will be submitted for decision. And we will now hear oral argument in Orozco-Zacarias v. Ashcroft. Mr. Gibbs, good morning. May it please the Court, my name is Robert Gibbs for the Orozco-Zacarias v. Ashcroft. And I would like to begin by thanking the Petitioner, Jose Luis Orozco-Zacarias. This is an unusual case for this Court. I think it's one of the first ones that have come here. It involves a combined
judges: O'scannlain, Rymer, Bybee